**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000310
11-FEB-2022
08:10 AM
Dkt. 57 SO**

NO. CAAP-21-0000310

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF H CHILDREN

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 21-00041)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Appellant Mother (**Mother**) appeals from the Orders Concerning Child Protective Act (**Foster Custody Order**), filed on April 22, 2021, in the Family Court of the First Circuit (**Family Court**).[1]

Mother contends the Family Court erred by granting Petitioner-Appellee State of Hawai'i, Department of Human Services (**DHS**), foster custody of her three children because the children's physical or psychological health or welfare was not subject to imminent harm, harm, or threatened harm by the acts or omissions of the children's family. At the time the Foster Custody Order was issued, the children were ten, eight, and four years old, respectively.

On May 26, 2021, the Family Court issued Findings of Fact and Conclusions of Law in support of its Foster Custody

---

[1] The Honorable John C. Bryant, Jr. presided.

Order.  Mother challenges Findings of Fact (**FOF**) Nos. 19, 22, 25, 38, 66, and 68, but she does not provide any specific argument as to why those findings are clearly erroneous.[2]  Instead, Mother argues generally that: the Family Court "erred in finding that it is more probable than not that the three children suffered substantial impairment in their ability to function or that there is a foreseeable and substantial risk of harm" by Mother; no

---

[2]  The challenged FOFs are as follows:

FINDINGS OF FACT

. . . .

19.    Mother did not maintain contact with DHS.

. . . .

22.    DHS has a supervised visitation plan for Mother, but she has refused visits.

. . . .

25.    When the children cannot reach Mother by phone or see her in person, they misunderstand and think the lack of contact is their fault.  The children have outbursts, cry and are in general distress over their lack of contact with Mother.  The children really miss Mother and wish she would contact them.

. . . .

38.    The DHS tried to work with Mother for a month and a half to prevent the need for removal of the children from the family home before filing the Petition on February 13, 2021.  If Mother had given [maternal aunt] a power of attorney to act as her attorney-in-fact, the DHS may not have been forced to intervene to ensure the safety of the children.

. . . .

66.    Mother's failure to visit with the children before and after the DHS' involvement is threatened psychological harm to the children.

. . . .

68.    Mother's failure to stay in contact with [maternal aunt] and her failure to provide [maternal aunt] with a Childcare Power of Attorney to act as her attorney-in-fact to register the children in school and get them basic medical care is neglect and threatened neglect to the children.

2

expert psychological testimony was presented regarding psychological harm or threat of harm; there was no evidence of abuse and neglect, or impairment to the children's ability to function; and Mother anticipated the children would remain with maternal aunt only temporarily and Mother did not abandon them.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows and we affirm.

"Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).  We review the Family Court's findings of fact under the clearly erroneous standard and its conclusions of law under the *de novo* standard.  Id.

**FOFs 19, 22, 25, and 38:**  Each of these findings deal with part of the underlying facts of this case.  As noted, although Mother challenges these findings, she provides no argument on these findings and does not point to any evidence or the record to show why these findings are clearly erroneous.  We therefore reject Mother's challenge to these findings.

**FOF 66:**  In FOF 66, the Family Court found that "Mother's failure to visit with the children before and after the DHS' involvement is threatened psychological harm to the children."  (emphasis added).  FOF 25 sets out the distress the children experienced because they could not get in contact with Mother.  Based on the record and applicable statutes, and the broad discretion the Family Court has in these matters, we conclude FOF 66 is not clearly erroneous.

Hawaii Revised Statutes (**HRS**) § 587A-28 (2018) provides, in relevant part:

§587A-28  Return hearing.

. . .

(d)     At the return hearing, the court shall decide:
(1)     Whether the child's <u>physical or psychological health or welfare has been harmed or is subject to threatened harm</u> by the acts or omissions of the child's family;
(2)     Whether the child should be placed in foster custody or under family supervision; and
(3)     What services should be provided to the child's parents.
(e)     If the court finds that the child's <u>physical or psychological health or welfare has been harmed or is subject to threatened harm</u> by the acts or omissions of the child's family, the court:
(1)     Shall enter a finding that the court has jurisdiction pursuant to section 587A-5;
(2)     Shall enter a finding regarding whether, before the child was placed in foster care, the department made reasonable efforts to prevent or eliminate the need to remove the child from the child's family home;
3)      Shall enter orders:
    (A)     That the child be placed in <u>foster custody</u> if the court finds that the child's remaining in the family home is contrary to the welfare of the child and the child's parents are not willing and able to provide a safe family home for the child, even with the assistance of a service plan; or
    (B)     That the child be placed in family supervision if the court finds that the child's parents are willing and able to provide the child with a safe family home with the assistance of a service plan;

(Emphasis added).

Further, HRS Chapter 587A-4 provides applicable definitions, including:

"Harm" means damage or injury to a child's physical or psychological health or welfare, where:
(1)     The child exhibits evidence of injury, including, but not limited to:
    (A)     Substantial or multiple skin bruising;
    (B)     Substantial external or internal bleeding;
    (C)     Burn or burns;
    (D)     Malnutrition;
    (E)     Failure to thrive;
    (F)     Soft tissue swelling;
    (G)     Extreme pain;
    (H)     <u>Extreme mental distress</u>;
    (I)     Gross degradation;
    (J)     Poisoning;
    (K)     Fracture of any bone;
    (L)     Subdural hematoma; or
    (M)     Death;
and the injury is not justifiably explained, or the history given concerning the condition or death is not consistent with the degree or type of the condition or death, or there is evidence that the condition or death may not be the result of an accident;

. . . .

> (3)  The child's psychological well-being has been injured as evidenced by a substantial impairment in the child's ability to function;
>
> (4)  The child is not provided in a timely manner with adequate food; clothing; shelter; supervision; or psychological, physical, or medical care[.]

HRS § 587A-4 (emphasis added).  Moreover, "[t]hreatened harm means any reasonably foreseeable substantial risk of harm to a child."  HRS § 587A-4 (emphases added).

Here, in FOF 66, the Family Court did not clearly err in finding "threatened harm," or in other words, that there was "reasonably foreseeable substantial risk of harm" such as either extreme mental distress or that the children's psychological well-being would be injured as evidenced by a substantial impairment in the children's ability to function.  See HRS § 587A-4.

Mother does not challenge a number of the Family Court's findings, and unchallenged findings are binding on this court.  In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).  It is uncontested that in December 2020, Mother and children had to leave a shelter in Waiʻanae when Mother tested positive for COVID-19, they lived temporarily with children's maternal grandmother, and then began living with the children's maternal cousin (referred to as **maternal aunt**) on December 26, 2020.  FOFs 15-16.  Although Mother had opportunities to move back into the Waiʻanae shelter and another shelter, she did not take the steps needed for those opportunities.  FOF 17-18.  Mother then moved out of maternal aunt's residence "due to disagreements," left the children behind, and stopped contacting maternal aunt in January 2021.  FOF 20.  On February 16, 2021, a police officer assumed protective custody of the children, protective custody was then transferred to DHS and DHS assumed temporary foster custody.  FOF 40.  Proceedings were held in the Family Court on February 23, 2021, March, 22, 2021, and April 21, 2021.  FOF 43, 49, 50.  As of the date of trial on DHS' foster custody petition held on April 21, 2021, Mother had not visited the children in person

since January 2021; and the children try to call Mother but she does not answer the phone.  FOF 21, 24.

The findings in FOF 25 indicate the effect on the children due to being unable to reach Mother or to see her in person.  The Family Court found, *inter alia*, that "[t]he children have outbursts, cry and are in general distress over their lack of contact with Mother."  FOF 25.

Moreover, Mother failed to provide for schooling or any medical care for her children.  It is uncontested that Mother was home schooling the children during 2020, but did not follow through with required testing for the children so they could advance to the next grade.  FOF 30.  Mother left the children with maternal aunt but refused to give maternal aunt power of attorney or any other authority to care for the children.  FOF 31.  As of January 2021, the children were not registered in any school and because she did not have power of attorney to act as Mother's attorney-in-fact, maternal aunt could not register them for school.  FOF 33-34.  Further, without a power of attorney, maternal aunt could not consent to regular medical and dental care for the children.  FOF 35.

Given this record, FOF 66 is not clearly erroneous.

**FOF 68**: In FOF 68, the Family Court found that Mother's failure to be in contact with maternal aunt and to provide maternal aunt with a power of attorney for the children to register them in school and provide basic medical care is neglect and threatened neglect.  FOF 68 is not clearly erroneous, although HRS § 587A-28 does not use the word "neglect."

In any event, Mother does not challenge FOF 65, in which the Family Court found the children's physical "health or welfare are subject to imminent harm, has been harmed, or is subject to threatened harm by the acts or omissions of Mother[.]" FOF 65.  The Family Court did not find any physical abuse, but harm is also defined as "[t]he child is not provided in a timely manner with adequate food; clothing; shelter; supervision; or psychological, physical, or medical care."  HRS § 587A-4.  In

this case, the physical welfare of the children was subject to threatened harm because there was a reasonably foreseeable substantial risk Mother would not provide adequate supervision, or physical or medical care.

Given the record, the Family Court did not err by awarding DHS foster custody based on threatened harm to the children from Mother's acts or omissions.

Therefore, IT IS HEREBY ORDERED that the "Orders Concerning Child Protective Act," filed on April 22, 2021, in the Family Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, February 11, 2022.

| | |
|---|---|
| On the briefs: | /s/ Lisa M. Ginoza<br>Chief Judge |
| Herbert Y. Hamada,<br>for Mother-Appellant | /s/ Keith K. Hiraoka<br>Associate Judge |
| Gay M. Tanaka,<br>Julio C. Herrera,<br>Deputies Attorney General,<br>Department of the Attorney<br>General, for Appellee | /s/ Karen T. Nakasone<br>Associate Judge |